IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DPF ALTERNATIVES OF TEXAS, LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:24-CV-288-DII |
| | § | |
| DET DIESEL EMISSION TECHNOLOGIES, | § | |
| LLC and SYNERGY CATALYST, LLC, | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |

## ORDER

Before the Court is a motion to transfer filed by Defendants/Counter-Plaintiffs DET Diesel

Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy") (collectively,

"Defendants"). (Dkt. 13). Plaintiff/Counter-Defendant DPF Alternatives of Texas, LLC

("Plaintiff") filed a response in opposition, (Dkt. 14), and Defendants filed a reply. (Dkt. 15). Having

considered the parties' briefs, the record, and the relevant law, the Court finds that the motion

should be granted.

## I. BACKGROUND

Plaintiff is a Hutto, Texas-based franchisee of DPF Alternatives, LLC ("DPF Alternatives").

(Resp., Dkt. 14, at 2). DPF Alternatives and its franchisees specialize in providing services for diesel

particulate filters ("DPFs"), which are devices designed to remove diesel particulate matter or soot

from the exhaust gas of a diesel engine. (*Id.*). Plaintiff provides equipment, training, and other

resources for DPF servicing in Texas. (*Id.*). Defendants, meanwhile, specialize in the removal,

replacement, and maintenance of DPFs. (Counterclaim, Dkt. 10, at 11). In 2019, they allegedly

developed a new piece of equipment for "recoring" existing emission control housings within diesel

engines' DPFs. (*Id.*). Defendants claim that this "recoring" process allows for the quick replacement

of the core of a DPF with reduced effort, equipment, and inventory. (*Id.*).

Plaintiff alleges that, around July 2021, Plaintiff was contacted by Peter Lambe ("Lambe"), a sales representative of Defendants, offering to sell equipment and services to Plaintiff. (*Id.*). Lambe claimed that Defendants had patented technologies related to recoring technology and allegedly "used threats of its patent exclusivity to coerce" Plaintiff into purchasing Defendants' products and services. (*Id.*). The parties entered into a Master Services Agreement ("MSA"), which established a business relationship between the parties and allowed Plaintiff to use Defendants' recoring equipment, methods, and process. (Counterclaim, Dkt. 10, at 12). The MSA also contained a forum selection clause, stating that any claims "relating to" the contract must be filed in the state or federal court in Dallas County, Texas. (MSA, Dkt. 13-1).

The parties' relationship subsequently broke down. Plaintiff alleges that it was misled because, after signing the MSA, it discovered that Defendants did not have any issued patents, much less one that covered their recoring equipment and processes. (Resp., Dkt. 14, at 3). Meanwhile, Defendants allege that Plaintiff disclosed their trade secrets without their consent and used those trade secrets to create a new and competing technology. (Counterclaim, Dkt. 10, at 12–13). Plaintiff filed the instant action on March 18, 2024, bringing claims for false marketing and false advertising under federal patent law, trademark law, and the Sherman Act. (Compl., Dkt. 1). Defendants filed counterclaims on May 31, 2024, for breach of contract under the MSA and for trade secret misappropriation. (Counterclaim, Dkt. 10, at 14–19).

On June 28, 2024, Defendants moved to transfer this case to the Dallas Division of the Northern District of Texas. (Dkt. 13). Defendants allege that Plaintiff signed a valid forum selection clause requiring all claims "relating to" the MSA to be filed in Dallas and that this action should therefore be transferred to the Northern District of Texas. (*Id.* at 5–8). In response, Plaintiff argues that their federal statutory claims fall outside the scope of the forum clause and that the MSA's forum-selection clause does not apply. (Resp., Dkt. 14, at 4).

2

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In considering a § 1404(a) motion to transfer, a district court should normally begin by evaluating both the convenience of the parties and various public-interest considerations." *Davis v. Valsamis, Inc.*, 181 F. Supp. 3d 420, 425 (S.D. Tex. 2016) (citing *Atl. Marine Const. Co. v. U.S. D. for W.D. Tex.*, 571 U.S. 49, 62–63 (2013)).

That analysis differs when a court evaluates a motion to transfer based on a forum-selection clause. *Id.* "A forum-selection clause is a significant factor that figures centrally in the district court's calculus." *Id.* at 424–25 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "The court must first determine whether a contractually valid forum-selection clause exists." *Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 460 (S.D. Tex. 2017) (citing *Atl. Marine*, 571 U.S. at 62–63). If one does, the court must determine whether the case falls within its scope. *Id.* (citing *Atl. Marine*, 571 U.S. at 62–63). If a valid forum-selection clause exists and the claims are within its scope, the court "should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co.*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a valid forum-selection clause be denied. *Id.*

## III. DISCUSSION

### A. Whether the Forum-Selection Clause Governs Plaintiff's Claims

The MSA provides: "Exclusive venue for any proceeding relating to this Agreement shall lie with the state and federal courts located in Dallas County, Texas." (MSA, Dkt. 13-1, at 13). Plaintiff does not contest that it is a party to the MSA, that the forum-selection clause is valid, or that the forum-selection clause is exclusive. Accordingly, the only question in genuine dispute is

whether Plaintiff's claims fall within a broad construction of the forum-selection clause. *See Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, No. CIV A 309-CV-0430-G, 2010 WL 445927, at *5 (N.D. Tex. Feb. 9, 2010) (forum-selection clauses that contain the language "relate to" or "relating to" should be broadly construed) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

The background of Plaintiff's complaint shows that the MSA is factually related to Plaintiff's claims. To recap, the parties entered into a contract (the MSA) largely so that Plaintiff could use Defendants' intellectual property, which ostensibly was protected by Defendants' patents. (*See* Compl., Dkt. 1, at 5–6). Plaintiff learned that Defendant "did not have any issued patents" and therefore could not provide Plaintiff with the valuable intellectual property it has promised in the MSA. (*Id.* at 6–7). Plaintiff then sued, alleging false marking under 35 U.S.C. § 292, which prohibits falsely marking "any unpatented article" with "the word 'patent' . . . for the purpose of deceiving the public[.]" (*Id.* at 7–8). Plaintiff also sued for false descriptions under the Lanham Act, arguing that Defendants have "ma[de] false statements of fact in . . . commercial statements about its DPF re-coring equipment and technology." (*Id.* at 8–9).

In sum, Defendants allegedly made false representations related to fake patents and marks, Plaintiff entered into the MSA based on those representations, and Plaintiff is now suing because it alleges those representations were fake. Plaintiff's federal statutory claims are intertwined with the MSA. Defendants' tortious conduct, which was discovered because of Defendants' conduct under the MSA, is the cause of this suit. Plaintiff's losses, which form the basis of the injuries asserted in this case, stem from the MSA. Finally, the MSA notes that its purpose is to license Defendants' intellectual property. (MSA, Dkt. 13-1, at 5). That intellectual property (or absence thereof) forms the basis of Plaintiffs' Patent and Lanham Act claims. *See Flowbee Intl., Inc. v. Google, Inc.*, No. CV C-

09-199, 2010 WL 11646901, at *3–6 (S.D. Tex. Feb. 8, 2010) (holding that Lanham Act claims were related to a contract that discussed advertisement and distribution of the plaintiff's mark).

Plaintiff repeatedly emphasizes that because it brings only federal statutory claims, its complaint is not related to the MSA. (*See* Resp., Dkt. 14). However, the Fifth Circuit discourages a strict adherence to examining a plaintiff's stated cause of action. *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444–45 (5th Cir. 2008). Instead, the Fifth Circuit instructs that courts should employ a "common-sense view of the causes of actions to determine whether" the forum-selection clause covers a plaintiff's claims. *Id.* Here, a common-sense view of Plaintiff's claims would find that they are related to the MSA, even if they do not sound in contract law. *See KeyCity Capital, LLC v. Davenport Inv., LLC*, No. 3:21-CV-2046-D, 2022 WL 581146, at *7 n.16 (N.D. Tex. Feb. 25, 2022) (noting that artful pleading of causes of action should not defeat common-sense application of forum-selection clause).

Further emphasizing this point, Plaintiff's complaint implicitly references the MSA several times. Plaintiff states it "agreed to purchase Defendants' Recore products and services" beginning in August 2022. (*Id.* at 6). That agreement is the MSA. (*See id.*; Reply, Dkt. 15, at 2). Plaintiff uses similar language again: "After agreeing to purchase Defendants' equipment, [Plaintiff] learned that Defendants did not have any issued patents" and "the purchased press and equipment was worth less than 10% than the purchase price of the equipment, the greatly inflated value of the equipment directly attributed to Defendants' claim of patent protection for the equipment." (*Id.*). Plaintiff's own repeated references to the MSA constitute strong evidence that its claims are related to the MSA.

Further arguing against coverage under the forum-selection clause, Plaintiff suggests that the MSA is narrow because it does not include language referencing "any action relating to the services performed[.]" (Resp., Dkt. 14, at 4 (quoting *Pinnacle Interior*, 2010 WL 445927, at *5)). It is not clear

5

that the language at issue in *Pinnacle Interior* is in fact broader than the language here—only that it is more detailed. Courts generally interpret "relating to" language liberally and do not differentiate beyond that broad scope. *See, e.g., Blueskygreenland Envtl. Sols., LLC v. Rentar Envtl. Sols., Inc.*, No. 4:11-CV-01745, 2011 WL 6372842, at *4 (S.D. Tex. Dec. 20, 2011); *MaxEn Capital, LLC v. Sutherland*, No. CIV.A.H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009). At any rate, the relevant question is whether the MSA relates to Plaintiff's claims, not whether the MSA uses the broadest possible language of forum-selection clauses.

Plaintiff also relies on *Dixie Electric, LLC v. Jarwin*, No. MO:17-CV-00066-RAJ, 2017 WL 8727481, at *6 (W.D. Tex. June 20, 2017), which employed a three-part test to determine if a tort claim "related to" the parties' contract. In *Dixie Electric*, the Court examined: "(1) whether the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) whether resolution of the claims relates to interpretation of the contract; and (3) whether the claims involv[e] the same operative facts as a parallel claim for breach of contract." *Id.* at *6. (quoting *AlliantGroup, L.P. v. Mols*, No. CV H–16–3114, 2017 WL 432810, at *7 (S.D. Tex. Jan. 30, 2017)).

There are two problems with Plaintiff's reliance on *Dixie Electric*.[1] First, Plaintiff does not bring tort claims. (*See* Compl., Dkt. 1, at 7–10). Instead, Plaintiff brings federal statutory claims. (*Id.*). Accordingly, *Dixie Electric*'s test, by its own terms, does not apply. Second, and more importantly, *Dixie Electric* dealt with a forum-selection clause for any suit "arising out of, or in

---

[1] It is not clear that Plaintiff's claims would fall outside the forum-selection clause if *Dixie Electric* did apply. First, Plaintiff's claims do at least partially depend on the existence of a contractual relationship: Plaintiff complains of paying ten times more for Defendants' product than it was worth, which is a substantively contractual claim that depends upon the MSA, even if Plaintiff frames its claim in federal statutory terms. Second, resolution of the parties' claims will likely involve interpretation of the MSA, which specifically includes all of Defendants' "Intellectual Property, and all copyrights, trademarks, and patentable rights related thereto[.]" (MSA, Dkt. 13-1, at 5). Finally, many of the operative facts are the same, as both Plaintiff's current claims and a hypothetical claim for breach of contract under *Dixie Electric* would involve the validity of Defendants' asserted patents, the price paid by Plaintiff for the products, and the representations allegedly made by Defendants to induce Plaintiff into signing the MSA.

connection with" the contract at issue. *Dixie Electric*, 2017 WL 8727481, at *4. The district court then focused on whether the claim "arose out" the parties' contract, not whether the claims were related. *Id.* at *5–7; *see also AlliantGroup, L.P. v. Mols*, No. CV H-16-3114, 2017 WL 432810, at *7 (S.D. Tex. Jan. 30, 2017) (adopting test for forum-selection clauses using "arising under" language).

As a result, *Dixie Electric*'s test does not strictly control because the MSA covers any claims "relating to" the contract, not just those "arising under" the contract. Again, "[f]orum-selection clauses that cover disputes that 'relate to' an agreement are generally interpreted broadly, while clauses that use the language 'arising out of' an agreement are construed narrowly." *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 821 (S.D. Tex. 2022) (quoting *Buc-ee's*, 262 F. Supp. 3d at 460); *Pennzoil*, 139 F.3d at 1067 (clause using "relating to" language is "broad" and was "not are not limited to claims that literally 'arise under the contract,' but rather embrace[d] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."). Here, Plaintiff's federal statutory claims may not "arise under" the MSA, but they are plainly related. The complaint repeatedly references the MSA and Defendants' conduct pursuant to the MSA is largely responsible for Plaintiff's injuries and standing to bring suit.

Finally, Plaintiff suggests that this action cannot relate to the MSA because Plaintiff's franchisor, DPF Alternatives, is asserting the same causes of action against Defendants in a separate federal court case, even though DPF Alternatives never contracted with Defendants. (Resp., Dkt. 14, at 6 (citing *DPF Alternatives, LLC v. DET Diesel Emission Technologies, LLC et al.* No. 1:23-CV-2860-SKC-NRN (D. Co. filed Oct. 30, 2023)) (the "Colorado action")). Plaintiff argues the Colorado action is proof that its causes of action are unrelated to the MSA because no contract is needed to bring the same causes of action. (*Id.*). There are two problems with Plaintiff's argument. First, the Colorado action shows, at most, that a contract is not necessary to bring federal statutory claims where there is no preexisting contract. Here, however, the parties have entered into a

7

contract, and so the inquiry is only whether the contract is related to those claims. Second, and more importantly, the Colorado action itself references the MSA (and other agreements) as key facts of the case. *See DPF Alternatives*, No. 1:23-CV-2860, (Compl., Dkt. 1, at 7–9) ("Defendants used [their] false statements concerning the patented technology and equipment to induce the DPF Alternatives franchisees into signing long-term 'master service agreements' . . . . These agreements between Defendants and the DPF Alternatives franchisees are instead illegal franchising agreements, as defined under federal law . . . ."). Therefore, even in the Colorado action, the claims are clearly related to the parties' contracts. Accordingly, the Court finds that the forum-selection clause covers Plaintiff's claims.

### B. Whether Other Factors Weigh Against Transfer

As *Atlantic Marine* makes clear, if a valid forum-selection clause exists, a district court "should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co.*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a valid forum-selection clause be denied. *Id.*

No such extraordinary circumstances exist here. Because the parties have signed a valid forum-selection clause, Plaintiff's choice of forum and the private-interest factors bear no weight. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016). While the public-interest factors can, on rare occasions, defeat a forum-selection clause, that extremely high burden is not met here.

The first public interest factor examines court congestion and "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). If anything, this factor weighs in favor of transfer. The Austin Division of the Western District of Texas has a particularly heavy caseload. The undersigned is the sole active federal district judge in Austin and has a docket of over 900 active civil cases. While the Northern

District of Texas also has a heavy civil caseload,[2] the factor cannot be said to weigh *against* transfer, much less to the degree needed to disregard a valid forum-selection clause.

The second public interest factor examines the benefits of deciding local issues at home. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *See In re Google LLC*, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). Plaintiff claims that it resides in this district, weighing against transfer. (Resp., Dkt. 14, at 9). On the other hand, Defendants identify a pending suit in the Dallas Division of the Northern District of Texas that would benefit the parties by allowing one court to oversee multiple overlapping cases. (*See* Mot. Transfer, Dkt. 13, at 10–11 (citing *RTR DPT, LLC v. DET Diesel Emission Technologies, LLC, et al.*, No. 3:24-cv-01371-P (N.D. Tex. filed Jan. 5, 2024))). Both arguments are inapplicable, as the local interest analysis focuses on "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024) (emphasis in original). Neither party identifies any non-party citizens with a significant interest in this case, so the factor is neutral.

The last two factors are also neutral. Both forums are equally familiar with federal law and there are no issues regarding conflict of laws. Because three factors are neutral and one weighs in favor of transfer, Plaintiff has not met its burden of showing the forum-selection clause should be set aside on the basis of the public interest factors. Accordingly, the Court will grant the motion to transfer.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' Motion to Transfer Venue, (Dkt. 13), is **GRANTED**.

---

[2] *See, e.g.*, Civil Cases Filed, Terminated, and Pending, U.S. District Courts—Civil, Federal Judicial Center (March 21, 2023), available at https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables.

**IT IS FURTHER ORDERED** that this case is **TRANSFERRED** to the Northern District of Texas, Dallas Division.

**SIGNED** on August 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE